UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES CARL LISSADE,<br><br>                  Plaintiff,<br><br>      v.<br><br>POLICE OFFICER ROMEL HILL, et al.,<br><br>                  Defendants. | **MEMORANDUM & ORDER**<br>24-CV-01182 (HG) (RML) |

**HECTOR GONZALEZ**, United States District Judge:

After New York City Police Department ("NYPD") officers arrested him for an incident involving his motorized scooter bike, *pro se* Plaintiff James Carl Lissade initiated this action against Officers Romel Hill, Elijah Boyle, Adrian Duran, and Kingsley Joachim (together, the "Officer Defendants" or "Defendants"), as well as the 71st Precinct.[1]  *See* ECF No. 1 (Complaint, "Compl.").[2]  Plaintiff brings claims under 42 U.S.C. § 1983 ("Section 1983"), alleging that Defendants violated his First, Fourth, Sixth, and Eighth Amendment rights.  *See* Compl. at 5.  Plaintiff also brings a claim for stolen property under what he refers to as the "Tort Claim Act," and several claims under the Federal Criminal Code, 18 U.S.C. §§ 1, *et seq.*  *See* Compl. at 5–6.  He seeks $105,380,000.00 in damages.  *See id*. at 9.  Defendants have moved for

---

[1]    The Court *sua sponte* dismisses the 71st Precinct from this action because the NYPD and its precincts are not suable entities.  *See, e.g., Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007); *Williams v. John*, No. 23-cv-9583, 2024 WL 1468112, at *3 (E.D.N.Y. Apr. 4, 2024) (police precinct is not a suable entity).

[2]    Unless otherwise indicated, when quoting cases and the parties' papers, the Court omits all internal quotation marks, alteration marks, emphases, footnotes, and citations.  The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

summary judgment on several, but not all, of these claims.[3]  For the reasons set forth below, Defendants' motion for partial summary judgment is GRANTED.

## FACTUAL BACKGROUND

The following facts are taken from Defendants' Local Civil Rule 56.1 Statement of Material Facts and its accompanying exhibits.  On January 2, 2024, Plaintiff rode his motorized scooter bike—a two-wheeled vehicle with a lawnmower-style pull switch, driver's seat, and pegs for the driver's feet—to a Golden Krust restaurant in Brooklyn and parked the scooter on the sidewalk in front of the restaurant.  *See* SOF ¶¶ 1, 5; Dep. Tr. at 19:17–20:3, 26:1–13.  His scooter was unregistered, uninsured, and intended for off-road use only; it had no license plate or turn signals.  *See* SOF ¶¶ 2, 4 (citing Dep. Tr.).  Plaintiff did not have a motorcycle license or a helmet.  *See id.* ¶ 3.

As Plaintiff exited the restaurant with his food, NYPD officers approached him.  Officer Duran asked Plaintiff for his license, registration, and proof of insurance for the scooter .  *See id.* ¶ 6.  Plaintiff refused and told the officers they could "steal" his scooter if they wanted.  *See id.* ¶¶ 7–8.  Plaintiff continued to refuse the officers' instructions, even after Officer Duran warned him that he would be taken to the precinct if he refused to show identification.  *See id.*  Plaintiff responded by saying, "Not a problem.  If you'd like to kidnap me right now, not a problem.  Go ahead.  You can kidnap me right now."  *See* Hill Video at 16:11:00–16:14:00.

---

[3]    The motion papers consist of:  ECF No. 28 (Defendants' Notice of Motion); ECF No. 29 (Declaration of Randy Nandlall); ECF No. 29-1 (Transcript of Plaintiff's Deposition, "Dep. Tr."); ECF No. 29-2 (Officer Hill Body-Worn Camera Footage, "Hill Video"); ECF No. 29-3 (Officer Duran Body-Worn Camera Footage, "Duran Video"); ECF No. 29-4 (Officer Otero Body-Worn Camera Footage, "Otero Video"); ECF No. 30 (Defendants' Rule 56.1 Statement, "SOF"); ECF No. 31 (Defendants' Memorandum of Law, "Mot."); ECF No. 36 (Plaintiff's Opposition, "Opp."); ECF No. 39 (Defendants' Reply, "Reply"); ECF No. 40 (Plaintiff's Supplemental Response in Opposition; "Supp. Opp.").

Officer Duran asked again for Plaintiff's identification, to which Plaintiff responded by saying, "If you'd like to take my identification, that will be $10,000.  Do you accept that?"  *See id.*  Throughout the exchange, Plaintiff continued to refuse to show identification unless the police officers agreed to pay him.  *See id.*  Plaintiff said to them, "You can take me to the cell.  You want to take me there?  No problem."  *See id.*  Plaintiff then turned around, put his hands behind his back, and asked the officers to take him to the precinct while telling them that he would "make a lot of money off of this."  *See* SOF ¶¶ 8–9; *see also* Hill Video at 16:11:00– 16:14:00 ("You can commit tort against me, Sir.  Here.  [. . .]  You want to kidnap me?  Kidnap me.").

Officer Duran then handcuffed Plaintiff and asked if he had anything on him that could injure the officers.  *See* Hill Video at 16:11:00–16:14:00.  Plaintiff refused to answer and stated, "I do not consent to any searches or seizures."  *See id.*  Plaintiff repeated this phrase as Officer Duran patted him down.  *See id.*

Officers Hill and Boyle drove Plaintiff to the precinct.  *See id.* at 16:22:00–16:29:00.  While booking Plaintiff, an officer asked if he needed any medical attention.  *See id.* at 16:31:00–16:32:09.  Plaintiff calmly responded that he did.  *See id.*  The officer asked him, "what's wrong?" and Plaintiff said, "I've been kidnapped and I've been hurt."  *See id.*  He did not elaborate.  *See id.*  Another officer then asked if Plaintiff wanted to speak to EMTs, to which Plaintiff replied, "yes, please," again without offering any explanation.  *See id.*

Within two hours, Officer Duran released Plaintiff from the holding cell and issued him two tickets (one for reckless driving and one for operating an unregistered vehicle) and two summonses for a court appearance in 20 days.  *See* SOF ¶ 10; Duran Video at 18:13:00– 18:16:15.  Plaintiff put on his sweatshirt, shoes, and jacket without any assistance or apparent

3

discomfort as Officer Duran told him how he could retrieve the scooter after registering it. *See* SOF ¶¶ 11; Duran Video at 18:13:00–18:16:15.

Officer Duran then returned Plaintiff's personal belongings (*e.g.*, phone, keys, wallet, and gloves) to him. *See* Duran Video at 18:17:00–18:19:45. Officer Duran asked if Plaintiff still needed an ambulance, and when Plaintiff responded that he did, Officer Duran told him that an ambulance was on its way but they did not have an estimated arrival time. *See* SOF ¶ 15; Duran Video at 18:17:00–18:19:45. When Officer Duran asked why Plaintiff needed an ambulance, Plaintiff replied, "he hurt my wrist." *See* Duran Video at 18:17:00–18:19:45. It is unclear who "he" referred to, since Plaintiff was speaking to Officer Duran, who had handcuffed him. *See* Hill Video at 16:12:18.

Plaintiff stayed at the precinct "maybe 20 minutes" waiting for an ambulance before "decid[ing] to go home" and "deliver a package." *See* Dep. Tr. at 67:19–68:9. He did not seek any other medical treatment for the alleged pain. *See* SOF ¶¶ 17–18; Dep. Tr. at 59:18–24. During this litigation, Plaintiff testified that his wrist pain was caused by the handcuffs and that it lasted "[m]aybe 30 minutes[, a]s long as they were on me," Dep. Tr. at 76:12–19, with residual physical pain for "maybe an hour," *id.* at 77:4–6. He described his wrist pain as slightly more painful than "stubb[ing his] toe on the edge of [his] bed[.]" *Id.* at 77:7–21 (explaining that on a scale from one to ten, the handcuff pain was "a seven" and stubbing his toe would be "about a six"). At no point while handcuffed had Plaintiff complained about the handcuffs or otherwise indicated that they were too tight. *See* SOF ¶ 12.

## PROCEDURAL HISTORY

Plaintiff commenced this action on February 12, 2024, asserting several claims under Section 1983 for constitutional violations, a claim for stolen property under what he refers to as

the "Tort Claim Act," and three claims under the Federal Criminal Code.  *See* Compl. at 5–6.  Plaintiff's motion to proceed *in forma pauperis* ("IFP"), ECF No. 2, was granted on February 23, 2024.  *See* ECF No. 4.

Defendants answered the Complaint on July 23, 2024, *see* ECF No. 8, and discovery commenced on September 26, 2024.  Although the fact discovery deadline was initially January 27, 2025, Plaintiff's failure to comply with discovery obligations required several extensions of that deadline.  *See* September 26, 2024, Minute Order; January 23, 2025, Text Order; February 5, 2025, Text Order; May 12, 2025, Text Order; September 24, 2025, Text Order (granting Defendants' motion to compel, ECF No. 18).  Discovery closed over a year after it commenced.  *See* November 12, 2025, Text Order.

Defendants filed a pre-motion conference letter in advance of a proposed motion for summary judgment on December 5, 2025.  *See* ECF No. 23.  On December 15, 2025, over a month after the magistrate judge entered an order certifying the completion of discovery, Plaintiff filed an untimely request for interrogatories.  *See* ECF No. 24.  The Court struck Plaintiff's request and explained, "[d]iscovery in this matter is closed, and the case is proceeding to summary judgment."  *See* December 22, 2025, Text Order.  Defendants filed their motion for summary judgment on January 23, 2026, *see* ECF Nos. 28–31, and the motion was fully briefed on March 26, 2026.

## **LEGAL STANDARD**

Summary judgment is appropriate where the movant meets its burden to show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  To defeat summary judgment, a nonmoving party "must do more than simply show that there is

some metaphysical doubt as to the material facts . . . and they may not rely on conclusory allegations or unsubstantiated speculation." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005); *see also Trans Sport, Inc. v. Starter Sportswear, Inc.*, 964 F.2d 186, 188 (2d Cir. 1992) (noting that summary judgment cannot be defeated "on the basis of conjecture or surmise").

A nonmoving party "must offer some hard evidence showing that its version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict[.]" *Id.*

In reviewing a motion for summary judgment involving a nonmoving, *pro se* litigant, the Court liberally construes the pleadings and briefs submitted by the *pro se* litigant and reads such submissions to raise the strongest arguments they suggest. *See Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007). Nevertheless, even a *pro se* litigant must offer some evidence that would defeat a motion for summary judgment, and he cannot survive summary judgment by relying on allegations in the complaint. *See, e.g., Brandever v. Port Imperial Ferry Corp.*, No. 13-cv-2813 2014 WL 1053774, at *2 (S.D.N.Y. Mar. 13, 2014). *Pro se* litigants are not excused from the well-settled rule that "[a] nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible." *T.Y. v. New York City Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009); *see also* Fed. R. Civ. P. 56(e)(2).

6

**DISCUSSION**

Defendants move for summary judgment on Plaintiff's "false arrest, unlawful search, malicious prosecution, excessive force (tight handcuffing), denial of medical attention, [] conspiracy[, and] stolen property" claims. *See* Mot. at 7–8. They argue that each of these claims fails as a matter of law and, alternatively, that Defendants are entitled to qualified immunity on the claims for false arrest, excessive force, and denial of medical attention. *See id.* at 10, 14, 15. Defendants do not move on Plaintiff's Section 1983 claims for First and Sixth Amendment violations, or his criminal claims for false impersonation of a federal official under 18 U.S.C. § 912, conspiracy against rights under 18 U.S.C. § 241, and deprivation of rights under 18 U.S.C. § 242. *See generally* Mot.

In opposing the motion, Plaintiff relies on inapplicable state procedural law to argue that summary judgment is premature because discovery is still outstanding. *See generally* Opp.; Supp. Opp. He fails to address any of Defendants' arguments, file a Rule 56.1 counterstatement, or otherwise "offer some hard evidence showing that [his] version of the events is not wholly fanciful," *D'Amico*, 132 F.3d at 149. Because Plaintiff did not respond to Defendants' Rule 56.1 Statement by filing his own Rule 56.1 Counterstatement, he has failed to dispute any of those facts, and they are deemed admitted. *See, e.g., Jones v. Lamont*, No. 05-cv-8126, 2008 WL 2152130, at *1 (S.D.N.Y.2008) ("In view of [*pro se*] plaintiff's failure to respond to the motion, the well supported factual allegations set forth in defendants' Rule 56.1 statement are deemed admitted."), *aff'd,* 379 F. App'x. 58 (2d Cir. 2010).[4]

---

[4]  The Court does not rely solely on Defendants' Rule 56.1 Statement in assessing the facts; it has independently reviewed all the evidence in the record. *See Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) ("[I]n determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court

Even so, considering Plaintiff's *pro se* status, the Court declines to dismiss his claims as abandoned, as Defendants have requested. *See* Reply at 5. The Court must still assess whether Defendants have fulfilled their burden of demonstrating that there is no genuine issue of material fact and their entitlement to judgment as a matter of law. *See Vermont Teddy Bear Co.*, 373 F.3d at 244.

## I.    Section 1983 Claims

### A.    Fourth Amendment Violations

Plaintiff alleges that Defendants violated his Fourth Amendment rights by: (i) falsely arresting him without a warrant; (ii) conducting an illegal search and seizure; and (iii) maliciously prosecuting him. *See* Compl. at 5, 8. The Court grants summary judgment for Defendants on each of these Fourth Amendment claims.

#### i.    False Arrest Claim

To prevail on a false arrest claim, Plaintiff must show that: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Guan v. City of New York*, 37 F.4th 797, 804 (2d Cir. 2022). "An arrest is 'privileged' if it is based on probable cause, for probable cause is a complete defense to a false arrest claim." *Id.; see also Figueroa v. Mazza*, 825 F.3d 89, 99 (2d Cir. 2016) ("The existence of probable cause to arrest— even for a crime other than the one identified by the arresting officer—will defeat a claim of false arrest under the Fourth Amendment.").

---

may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion.").

Defendants argue that Plaintiff's false arrest claim fails on the third and fourth elements because he "consented to the confinement" and they had probable cause to arrest him for multiple violations under the New York Vehicle and Traffic Law ("NYVTL") and the New York Penal Law ("NYPL"). *See* Mot. at 11–12.

The Court agrees that Defendants had probable cause to arrest Plaintiff. "[P]olice officers have probable cause to arrest when they reasonably believe that the person to be arrested has committed or is committing a crime." *Guan*, 37 F.4th at 805. Police officers are "entitled to rely on the allegations of fellow police officers" in deciding whether they have probable cause to arrest. *See Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000). An officer has probable cause to arrest an individual for even a minor traffic violation that is committed in the officer's presence. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence," including a traffic violation, "he may, without violating the Fourth Amendment, arrest the offender."); N.Y. Crim. Proc. Law ("NYCPL") § 140.10(2) (permitting arrests for "petty offenses" committed in an officer's presence); NYCPL § 1.20(39) ("'Petty offense' means a violation or a traffic infraction.").

Defendants maintain that Plaintiff violated multiple sections of the NYVTL including: (i) § 410 "Registration of Motorcycles"[5] because the scooter was not registered; (ii) § 375(18) "Equipment" because the scooter lacked turn signals; (iii) § 411 "Distinctive number; form of number plates" because the scooter lacked a license plate; (iv) § 501 "Drivers' licenses and

---

[5]    Plaintiff's scooter is considered a "motorcycle" for purposes of state vehicle and traffic laws. *See* NYVTL § 123 ("Every motor vehicle having a seat or saddle for the use of the rider and designed to travel on not more than three wheels in contact with the ground, but excluding a tractor.").

learners' permits" because Plaintiff lacked a motorcycle license; and (v) § 381(6) "Motorcycle equipment" because he lacked a helmet. *See* Mot. at 11. Defendants also contend that Plaintiff's refusal to comply with the officers' orders and provide his license, registration, and/or proof of insurance violated NYPL § 195.05 "Obstructing Governmental Administration in the Second Degree." *See* Mot. at 11–12.

The Court need not unpack each of these violations one by one because it is undisputed that at least some of these violations, like the lack of a helmet and license plate under NYVTL §§ 381(6) and 411, occurred in Officer Duran's and Officer Hill's presence. *See* Hill Video at 16:13:00–16:14:00; Dep Tr. 74:5–75:15. That, alone, gave Defendants probable cause to arrest Plaintiff. *See, e.g., Carruthers*, 153 F.4th at 180 ("A police officer is not liable for false arrest under Section 1983 if probable cause to arrest the plaintiff existed for any crime—whether or not that particular crime was closely related to the offense the officers said was the reason for the arrest."). Accordingly, Defendants' motion for summary judgment on the false arrest claim is granted because Defendants had probable cause to arrest him.[6]

### ii.    Unlawful Search and Seizure Claims

In analyzing an unlawful search and seizure claim, "courts look to the reasonableness of the search when determining whether a search violated a plaintiff's constitutional rights." *Serrano v. City of New York*, No. 16-cv-8105, 2018 WL 3392869, at *8 (S.D.N.Y. July 12, 2018), *aff'd,* 793 F. App'x 29 (2d Cir. 2019). "However, officers are generally permitted to conduct reasonable searches incident to a lawful arrest. Therefore, to the extent that there was

---

[6]     The Court need not address Defendants' argument regarding Plaintiff's consent because it finds that Defendants had probable cause to arrest him. Likewise, because it grants summary judgment for Defendants on the merits, the Court does not reach Defendants' alternative argument that they are entitled to qualified immunity.

probable cause to support plaintiff['s] arrests, any reasonable searches incident to [his] arrest[] were also lawful." *Id.* (collecting cases and citing *Arizona v. Gant*, 556 U.S. 332, 338 (2009)). Under the "search incident to arrest" exception to the Fourth Amendment's warrant requirement, a search incident to an arrest based on probable cause "is a reasonable intrusion under the Fourth Amendment" and "requires no additional justification." *United States v. Koron*, No. 95-cv-1657, 1996 WL 197234, at *2 (2d Cir. 1996). Indeed, "[a]n arrest pursuant even to a simple traffic violation permits a search incident to arrest." *Evans v. Solomon*, 681 F. Supp. 2d 233, 248 (E.D.N.Y. 2010).

Here, because the officers had probable cause to arrest Plaintiff, they were legally authorized to conduct a reasonable search incident to arrest. *See Harry v. City of New York*, No. 20-cv-5951, 2022 WL 17718339, at *4 (S.D.N.Y. Dec. 15, 2022) (granting summary judgment for the defendants because "to the extent that there was probable cause to support Plaintiff's arrest—which there was []—any reasonable searches incident thereto were also lawful."), *aff'd*, No. 23-cv-69, 2024 WL 260968 (2d Cir. Jan. 24, 2024). To determine whether the search was reasonable, courts "examine the degree to which it intrudes upon an individual's privacy and the degree to which it is needed for the promotion of legitimate governmental interests." *Sloley v. VanBramer*, 945 F.3d 30, 37 (2d Cir. 2019). Here, based on the Court's review of the body-worn camera footage, the authenticity of which is undisputed, the search was incident to the arrest and minimally invasive. *See* Hill Video at 16:11:10–16:15:00. Defendants are therefore entitled to summary judgment on Plaintiff's unlawful search and seizure claim.

### iii.    Malicious Prosecution Claim

To prevail on a Section 1983 claim against a state actor for malicious prosecution, Plaintiff must show that his Fourth Amendment rights were violated and establish the elements

of a malicious prosecution claim under state law. *See Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002). To establish those elements under New York law, Plaintiff must show that: "(1) the defendant[s] initiated a prosecution against plaintiff, (2) without probable cause to believe the proceeding can succeed, (3) the proceeding was begun with malice, and (4) the matter terminated in plaintiff's favor." *Rentas v. Ruffin*, 816 F.3d 214, 220 (2d Cir. 2016).

Among other things, Defendants argue that Plaintiff cannot prevail on his malicious prosecution claim because he was not prosecuted, given that he was only ticketed and issued summonses. *See* Mot. at 13. Defendants are correct. "[T]he issuance of a summons will not give rise to an action for malicious prosecution . . . under either § 1983 or state law." *Brown v. City of New York*, No. 15-cv-6217, 2016 WL 7410661, at *2 (E.D.N.Y. Dec. 22, 2016); *see also Leith v. Cnty. of Nassau*, No. 22-cv-06933, 2026 WL 1243399, at *3 (E.D.N.Y. May 6, 2026) (granting summary judgment for the defendants on a malicious prosecution claim because, by issuing tickets for traffic infractions, the officer defendants did not initiate criminal proceedings against the plaintiff). Summary judgment in favor of Defendants is warranted on this claim.

### B. Fourteenth Amendment Claims

#### i. Inadequate Medical Care

Plaintiff alleges that Defendants violated his Eighth Amendment rights by failing to provide him with adequate medical care after allegedly injuring his wrist while handcuffing him. *See* Compl. at 5, 8. Although Plaintiff brings this claim under the Eighth Amendment, it is properly analyzed under the Fourteenth Amendment because he was a pretrial detainee. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) ("A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the

Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight Amendment.").

To prevail on such a claim, Plaintiff must show that he "had a 'serious medical condition' and that it was met with 'deliberate indifference.'" *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000)).  "The first element requires 'a condition of urgency, one that may produce death, degeneration, or extreme pain.'" *Bruno v. City of Schenectady*, 727 F. App'x 717, 720 (2d Cir. 2018) (citing *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005)).  As to the second element, "an official does not act in a deliberately indifferent manner toward an arrestee unless the official 'acted *intentionally* to impose the alleged condition, *or recklessly* failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official *knew, or should have known*, that the condition posed an excessive risk to health or safety.'" *Id.* (emphases in original) (citing *Darnell*, 849 F.3d at 35).  Defendants argue that this claim fails because Plaintiff's wrist pain does not rise to the level of a "serious" medical condition, and, in any event, Plaintiff was offered medical attention but chose not to accept it.  *See* Mot. at 15–16.

Here, nothing in the record suggests that Plaintiff's wrist pain is "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Bruno*, 727 F. App'x at 720. Plaintiff's wrist pain from the handcuffs lasted for "[m]aybe 30 minutes[, a]s long as they were on [him]," Dep. Tr. at 76:12–19, with residual physical pain for "maybe an hour," *id.* at 77:4–6. Plaintiff described the pain as slightly more painful than "stubb[ing his] toe on the edge of [his] bed[.]" *Id.* at 77:7–21 (explaining that on a scale from one to ten, the handcuff pain was "a seven" and stubbing his toe would be "about a six").  After being released, Plaintiff put on his sweatshirt, shoes, and jacket without any assistance or apparent discomfort, *see* Duran Video at

13

18:13:00–18:16:15, and waited "maybe 20 minutes" at the precinct for an ambulance to arrive before "decid[ing] to go home" and "deliver a package." *See* Dep. Tr. at 67:19–68:9. Plaintiff did not seek any other medical treatment for the pain. *See id.* at 59:18–24 (testifying that he did not receive medical treatment or see a doctor or psychiatrist about the pain).

In light of this record, Plaintiff's injury fails to meet the threshold requirement for this claim. *See Dollard v. City of New York*, 408 F. Supp. 3d 231, 234, 237 n. 6 (E.D.N.Y. 2019) (finding no "serious medical condition" where handcuffing caused plaintiff's wrists to be swollen with red marks, hurting, and slightly bleeding, and her hands to be red and numb; plaintiff did not consult the doctor about the marks on her wrist; and the marks went away after a week and without any medication); *see also Gaines v. Okpok*, No. 03-cv-5095, 2006 WL 1652654, at *4 (E.D.N.Y. June 9, 2006) ("A broken finger, without more, simply does not present a condition of urgency of the type that may produce death, degeneration or extreme pain which correspondingly merits constitutional protection.").

Even if Plaintiff could establish a sufficiently serious medical condition, nothing in the record supports a finding that Defendants intentionally inflicted the wrist pain or recklessly failed to act with reasonable care to mitigate a health or safety risk. "A detainee must prove that an official acted intentionally or recklessly, and not merely negligently." *Darnell*, 849 F.3d at 36. Plaintiff points to no such evidence, nor does the Court identify any in the record. And while Plaintiff testified that he decided to go home because "something told [him] that they probably didn't call [the ambulance] at all," Dep. Tr. at 68:1–5, Plaintiff cannot defeat summary judgment by relying on such "unsubstantiated speculation." *See Jeffreys*, 426 F.3d at 554.

14

Accordingly, the Court grants summary judgment for Defendants on Plaintiff's claim for inadequate medical care.[7]

### ii.    Deprivation of Property

Plaintiff alleges that Defendants "stole the scooter and held it for ransom," in violation of the "Tort Claim Act." *See* Compl. at 5–7, 9. He presumably refers to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671, *et seq.* But because an FTCA claim can only be brought against the United States, and not New York municipal officials like Defendants, the Court construes Plaintiff's claim as a Section 1983 claim for deprivation of property without due process under the Fourteenth Amendment.

The Due Process Clause of the Fourteenth Amendment protects "against deprivations [of life, liberty, or property] without due process of law." *Rivera-Powell v. N.Y. City Bd. of Elections*, 470 F.3d 458, 464 (2d Cir. 2006). "The fundamental requisite of due process of law is the opportunity to be heard . . . at a meaningful time and in a meaningful manner." *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970).

Defendants correctly argue that Plaintiff's claim fails because New York provides adequate post-deprivation remedies for him to pursue. *See* Mot. at 17. "A government official's

---

[7]    Defendants also move for summary judgment on "Plaintiff's excessive force claim." *See* Mot. at 14–15. Even under a generous reading of the Complaint, Plaintiff does not appear to bring an excessive force claim. *See generally* Compl. To the extent Plaintiff intended to do so, however, the Court agrees with Defendants that summary judgment is warranted because nothing in the record supports such a claim. *See* Mot. at 14–15. It is well-established that minor, temporary injuries from tight handcuffs—such as superficial abrasions on wrists, swelling, or bruising are insufficient to support an excessive force claim. *See, e.g., Zeng v. Chell*, No. 19-cv-3218, 2024 WL 3360570, at *3 (S.D.N.Y. July 9, 2024) (collecting cases), *appeal dismissed*, No. 25-cv-1956, 2026 WL 361004 (2d Cir. Jan. 15, 2026). Considering Plaintiff's minor wrist pain, no reasonable juror could find that Defendants used excessive force to arrest him. *See Anderson*, 477 U.S. at 252.

15

random and unauthorized act does not violate a person's right to procedural due process if a meaningful postdeprivation remedy is available." *Abdullah v. NYPD 30th Precinct*, No. 24-cv-0137, 2024 WL 325385, at *4 (S.D.N.Y. Jan. 29, 2024). "Thus, a claim under Section 1983 asserting that a government official has deprived a person of a property interest is not cognizable in a federal district court if state law provides an adequate remedy for the deprivation of that interest." *Id.* "[W]hen a plaintiff asserts such a claim, the federal court's initial inquiry must be whether the state has provided adequate remedies to redress such unlawful acts." *Id.*

Here, New York state provides adequate post-deprivation remedies for Plaintiff to pursue. "Courts have found that the [NYVTL] and Article 78 of the New York Civil Practice Law and Rules provide adequate procedural due process to challenge parking and traffic summonses, and the resultant seizure and towing of a vehicle due to a plaintiff's failure to pay the associated fines." *DeLoach v. New York City through Dep't of Fin.*, No. 25-cv-7137, 2025 WL 2928947, at *2 (S.D.N.Y. Oct. 9, 2025) (collecting cases); *see also, e.g., Esperanza v. City of New York*, 325 F. Supp. 3d 288, 307 (E.D.N.Y. 2018) ("New York provides an adequate post-deprivation remedy in the form of state law causes of action for negligence, replevin, or conversion.").

Defendants stop short of saying whether Plaintiff has pursued any of these remedies. *See* Mot. at 17. But regardless of whether Plaintiff has taken advantage of these procedures, he points to no evidence (and the Court does not identify any in the record) that these remedies are inadequate. That, alone, is fatal to his claim. *See, e.g., Jackson v. Cuomo*, No. 20-cv-8930, 2022 WL 310154, at *10 (S.D.N.Y. Feb. 2, 2022) ("Courts have dismissed procedural due process claims where a mechanism exists to challenge a state official's action or deprivation, regardless

16

of whether the plaintiff took advantage of it."). Summary judgment is therefore warranted as to Plaintiff's deprivation of property claim.

## II.    First and Sixth Amendment Claims

Plaintiff's remaining Section 1983 claims allege First and Sixth Amendment violations. *See* Compl. at 5. Although Defendants do not move for summary judgment on these claims, the Court *sua sponte* dismisses both claims pursuant to 28 U.S.C. § 1915(e)(2)(B). A district court has the authority to dismiss an IFP action at any time if the Court determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." § 1915(e)(2)(B).

### A.    First Amendment Claim

Plaintiff alleges that Defendants violated his First Amendment right to assemble. *See* Compl. at 5. To determine whether Plaintiff states a First Amendment speech claim, the Court must examine "the statements in issue and the circumstances under which they [were] made to see whether or not they are of a character which the principles of the First Amendment . . . protect." *Piscottano v. Murphy*, 511 F.3d 247, 270 (2d Cir. 2007); *see also Salmon v. Blesser*, 802 F.3d 249, 255 (2d Cir. 2015) ("[P]laintiff must allege facts admitting a plausible inference that the defendant's actions restricted, or were retaliation against, speech or conduct protected by the First Amendment."). The same standard applies to freedom of assembly claims. *See Johnson v. Perry*, 859 F.3d 156, 171 (2d Cir. 2017) (explaining that the "same analytical framework applies whether the First Amendment right being exercised is speech . . . or other 'expressive activity' such as assembly"). Here, the Complaint fails to allege any facts indicating how Plaintiff was exercising his right to assemble or how that right was

17

restricted.  Accordingly, the Court dismisses this claim for failure to state a claim on which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

                **B.**      *Sixth Amendment Claim*

Plaintiff alleges that Defendants violated his Sixth Amendment right to be informed of the nature and cause of the accusation(s) against him.  *See* Compl. at 5.  The Sixth Amendment, by its terms, applies only to criminal prosecutions.  *See* U.S. Const. amend. VI.  Because the Complaint fails to allege that Plaintiff was criminally prosecuted, the Court dismisses this claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  *See, e.g., Fisk v. Letterman,* 501 F.Supp.2d 505, 521 (S.D.N.Y. 2007) ("Because the state court proceedings at issue here were not criminal proceedings, [the plaintiff's] Sixth Amendment claim[ ] lack[s] merit and must be dismissed.").

*      *      *

In light of Plaintiff's *pro se* status, the Court grants Plaintiff leave to amend his complaint on or before August 24, 2026, but only as to his First Amendment right to assemble and Sixth Amendment right to be informed of the nature and cause of the accusation(s) against him.  If Plaintiff's amended complaint exceeds the scope of the Court's grant of leave to amend, the Court will reject the amended complaint and direct the Clerk of Court to issue judgment on these two claims.

    **III.**    **Criminal Claims**

Finally, the Court *sua sponte* dismisses Plaintiff's criminal claims for:  (i) false impersonation of a federal official under 18 U.S.C. § 912; (ii) conspiracy against rights under 18 U.S.C. § 241; and (iii) deprivation of rights under 18 U.S.C. § 242.  *See* Compl. at 5–6.

It is well-settled that a plaintiff cannot assert claims under federal criminal statutes.  *See, e.g., Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009) ("To the extent that Appellants

18

assert claims based on the violation of federal criminal statutes, such as 18 U.S.C. §§ 241–242, these claims are not cognizable, as federal criminal statutes do not provide private causes of action.").  The "decision to prosecute is solely within the discretion of the prosecutor."  *Leeke v. Timmerman*, 454 U.S. 83, 87 (1981) (per curiam).  Neither Plaintiff nor the Court can direct prosecutors to initiate a criminal proceeding because only prosecutors possess discretionary authority to bring criminal actions, and they are "immune from control or interference by citizen or court."  *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972).  Accordingly, Plaintiff lacks standing to cause the federal criminal prosecution of others.  *See Linda R.S. v. Richard D.*, 410 U.S. 614, 618–19 (1973).

The Court therefore dismisses, for lack of subject matter jurisdiction, any claims in which Plaintiff seeks the federal criminal prosecution of anyone, including Defendants.  *See* Fed. R. Civ. P. 12(h)(3); *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) ("If [a] plaintiff[ ] lack[s] Article III standing, a [federal] court has no subject matter jurisdiction to hear [his] claim.").  The Court denies Plaintiff leave to amend these claims.  *See Cuoco*, 222 F.3d at 112 (explaining that where "better pleading will not cure" the problem with a complaint, leave to amend should be denied as futile).

## CONCLUSION

For the reasons explained herein, Defendants' motion for partial summary judgment, ECF No. 28, is GRANTED as to Plaintiff's Section 1983 claims for false arrest, unlawful search and seizure, and malicious prosecution in violation of the Fourth Amendment; and his inadequate medical care and deprivation of property claims in violation of the Fourteenth Amendment.  The Court *sua sponte* dismisses all claims against the 71st Precinct as a non-suable entity; *sua sponte* dismisses Plaintiff's Section 1983 claims alleging violations of his First and Sixth Amendment

19

rights for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii); and *sua sponte* dismisses for lack of subject matter jurisdiction Plaintiff's criminal claims for false impersonation of a federal official under 18 U.S.C. § 912, conspiracy against rights under 18 U.S.C. § 241, and deprivation of rights under 18 U.S.C. § 242.

In light of Plaintiff's *pro se* status, and because leave to amend should be freely given when justice so requires, *see* Fed. R. Civ. P. 15(a), the Court grants Plaintiff leave to amend his Complaint to address certain defects discussed in this Order, but <u>only</u> as to his First Amendment right to assemble and Sixth Amendment right to be informed of the nature and cause of the accusation(s) against him. If Plaintiff does not file an amended complaint on or before August 24, 2026, the Court will direct the Clerk of Court to issue judgment and close this case. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is respectfully directed to terminate the 71st Precinct from this action, mail a copy of this Order to *pro se* Plaintiff, and note the mailing on the docket. Plaintiff is requested to register his email address with the Clerk's Office no later than August 7, 2026, so that he may receive prompt email notifications of all docket entries.

SO ORDERED.

/s/ Hector Gonzalez
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
July 24, 2026

20